1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SEAN SHIELDS,

11          Plaintiff,                    No. 2: 10-cv-2866 WBS KJN P

12       vs.

13   SERGEANT KOELLING, et al.,

14          Defendants.                   ORDER

15   _____/

16   I.  Introduction

17          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action

18   pursuant to 42 U.S.C. § 1983, and an action pursuant to the Americans with Disabilities Act

19   ("ADA").  The defendants are Sergeants Koelling and Martinez.  Plaintiff alleges that on April

20   10, 2009, defendants forced plaintiff to move to an upper bunk even though plaintiff had a lower

21   bunk chrono.  Plaintiff later fell from the upper bunk and suffered injuries.

22          Pending before the court is plaintiff's motion to compel filed February 14, 2012.

23   The pending motion was filed pursuant to an order filed January 17, 2012.  In the January 17,

24   2012 order, the undersigned addressed plaintiff's motions to compel filed September 7, 2011,

25   and September 12, 2011.  The undersigned granted these motions to compel as to request for

26   admissions, set one, nos. 7, 8, 15, 16, 17, 20, 22, 24, 25, 26 and 27.  Defendants were ordered to

1

1  provide plaintiff with further responses to these requests within twenty-one days.

2      Plaintiff's motions to compel filed in September 2011 also addressed

3  interrogatories, requests for production of documents and a request for admissions, set two.

4  Plaintiff argued that defendants had failed to respond to these requests.  In their opposition to the

5  September motions to compel, defendants informed the court that they were now serving plaintiff

6  with responses to these requests.  The January 17, 2012 order granted plaintiff thirty days to file a

7  motion to compel addressing defendants' response to his interrogatories, request for production

8  of documents and request for admissions, set two.

9      The pending motion to compel addresses the matters discussed above.  For the

10 following reasons, plaintiff's February 14, 2012 motion to compel is granted in part.

11 II.  Request for Production of Documents, Set One

12     The reach of Fed. R. Civ. P. 34, which governs requests for production, "extends

13 to all relevant documents, tangible things and entry upon designated land or other property."

14 Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472-473 (1998), citing 8A C. Wright & A. Miller,

15 Federal Practice and Procedure § 2206, at 381.  Rule 34 does require that the party upon whom a

16 request is served "be in possession, custody, or control of the requested item."  Id., at 473, citing

17 Estate of Young v. Holmes, 134 F.R.D. 291, 293 (D. Nev.1991).  Under Rule 34, "[c]ontrol is

18 defined as the legal right to obtain documents upon demand. [Citation.] The party seeking

19 production of the documents . . . bears the burden of proving that the opposing party has such

20 control."  U.S. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452

21 (9th Cir. 1989)  See also In re Citric Acid Lit., 191 F.3d 1090, 1108 (9th Cir. 1999) (discussing

22 the same issue in a Rule 45 context).

23     *Request Nos. 1-7*

24     Plaintiff objects to defendants' responses to request nos. 1-7.  Defendants objected

25 that none of the documents sought in these requests were in their possession, custody or control.

26 These requests are set forth herein:

2

1        Request No. 1: Institutional Operations Plan ("IOP"), California
Department of Corrections and Rehabilitation, California State
2        Prison-Solano, Vacaville, CA, Plan for: Inmate Double Celling,
Number CSPS-L3-08-050, Dated November 2008.

3

        Request No. 2: IOP, California Department of Corrections and
4        Rehabilitation, California State Prison-Solano, Vacaville, CA, Plan
for: Disability Placement Program, Number: CSPS-CS/MD-08-
5        106.

6        Request for Production No. 3: IOP, California Department of
Corrections and Rehabilitation, California State Prison-Solano,
7        Vacaville, CA, Plan for Disability Placement Program, Number
CSPS/MD-10-106.

8

        Request No. 4: Any and all documents that refer or relate to
9        policies, procedures, IOPs, DOM Supplements, and practices in
effect in April 2009 for SOL Correctional and Medical staff
10       relating to Americans with Disabilities Act ("ADA").  This request
includes but is not limited to all policies, procedures, or practices
11       generated by CDCR as well as policies, procedures, IOP's, DOM
Supplements or practices specific to SOL.

12

        Request No. 5: Any and all documents that refer or relate to
13       policies, procedures, IOPs, DOM Supplements and practices in
effect in April 2009 for SOL Correctional and Medical staff
14       relating to Disabilities Placement Program ("DPP").  This request
includes but is not limited to all policies, procedures, or practices
15       specific to SOL.

16       Request No. 6: Any and all documents that relate to policies,
procedures, IOPs, DOM Supplements, and practices in effect in
17       April 2009 for SOL Correctional and Medical staff relating to
Disability Not Impacting Placement, Mobility Impaired ("DNM").
18       This request includes but is not limited to all policies, procedures,
or practices generated by CDCR as well as policies, procedures,
19       IOPs, DOM Supplements, or practices specific to SOL.

20       Request No. 7: Any and all documents that refer or relate to
policies, procedures, IOPs, DOM Supplements and practices in
21       effect in April 2009 for SOL Correctional and Medical staff
relating to Comprehensive Accommodation Chronos ("CAC"), and
22       or Medical Chronos.  This request included but is not limited to all
policies, procedures, IOPs, DOM Supplements or practices specific
23       to SOL.

24       In the opposition to the motion to compel, defendants state that they have access

25  to current policies and procedures of the Department of Corrections and Rehabilitation

26  ("CDCR") while on the job.  However, defendants state that they do not have access to the

policies and procedures from 2008-2009 that plaintiff seeks in request nos. 1-7.  Defendants state

that plaintiff could obtain these documents by way of a subpoena to CDCR.  Defendants state

that their counsel in the instant action does not represent CDCR.

In the instant case, plaintiff has sued defendants in their individual capacity only.

(Dkt. No. 1.)  Defendants are Correctional Sergeants, as opposed to prison officials with higher

ranking, such as the Warden.  For these reasons, the undersigned accepts defendants'

representation that they do not have possession, custody or control of the documents sought.[1]

Accordingly, the motion to compel as to request no. 1-7 is denied.

*Request Nos. 8-13*

Plaintiff objects to defendants' responses to request nos. 8-13.  Defendants

responded that they did not have possession of the documents sought in these requests, which

concerned training.  Defendants stated that they believed the documents sought were maintained

by the CDCR.  These requests are set forth herein:

> Request No. 8: Any and all records of training that has been provided to each defendant on ADA.  The time frame for this discovery request is the time each defendant became employed by the CDCR to the present.
>
> Request No. 9: Any and all records of training that has been provided to each defendant on DPP.  The time frame for this discovery request is the time each defendant became employed by the CDCR to the present.
>
> Request No. 10: Any and all records of training that has been provided to each defendant on inmates categorized as DNM.  The time frame for this discovery request is the time each defendant became employed by the CDCR to the present.
>
> Request No. 11: Any and all records of training that has been provided to each defendant on Comprehensive Accommodation

---

[1]  If sued in an official capacity, the degree to which the defendant has access to government documents expands exponentially in that it is well established that a suit against a named defendant in official capacity is the functional equivalent of a suit against the state. Center for Bio-Ethical Reform, Inc. v. LASD, 533 F.3d 780, 799 (9th Cir. 2008); Butler v. Elle, 281 F.3d 1014, 1023 (n.8) (9th Cir. 2002); Ruvalcaba v. City of Los Angeles,, 167 F.3d 514, 524 n.3 (9th Cir. 1999), all citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

1    Chrono ("CAC"), or Medical Chronos in general. The time frame
     for this discovery request is the time each defendant became
2    employed by the CDCR to the present.

3    Request No. 12: Any and all records of training that has been
     provided to each defendant on the Disability and Effective
4    Communication System ("DECS"). The time frame for this
     discovery request is the time each defendant became employed by
5    the CDCR to the present.

6    Request No. 13: Any and all records of training that has been
     provided to each defendant on the DECS Roster Reports. The time
7    frame for this discovery request is the time each defendant became
     employed by the CDCR to the present.

8

9        In the opposition to the motion to compel, defendants state that they do not

10   maintain copies of their training records. Defendants state that the training they go through is

11   required, and tracked by CDCR, as part of their employment. Defendants state that plaintiff

12   could obtain these documents by requesting them from CDCR.[2]

13       Because defendants are sued in their individual capacities, the undersigned

14   accepts their representation that they do not have possession, custody or control of these

15   documents. Accordingly, the motion to compel as to these requests for production of documents

16   is denied.

17       *Request Nos. 14-18*

18       Defendants objected that request nos. 14-18 were "very broad." Defendants also

19   stated that they did not possess the documents sought, which concerned training. Defendants

20   believed that these documents were maintained by the CDCR. These requests are set forth

21   herein:

22   ////

23

24       [2] Defendants also state that CDCR would not produce personnel records of an officer
     without objection, as these types of documents have applicable privileges. Because plaintiff has
25   not sought these documents from CDCR, and CDCR has not made any objections to these
     requests, the undersigned will not address this issue further at this time, but it is addressed below
26   in requiring amended responses to interrogatories Nos. 2-5.

1   Request no. 14: Any and all documents received, read, or reviewed
2   by each defendant that refer or relate to training, policies or
    procedures on ADA.

3   Request No. 15: Any and all documents received, read, or reviewed
4   by each defendant that refer or relate to training, policies or
    procedures on DPP.

5   Request No. 16: Any and all documents received, read, or reviewed
6   by each defendant that refer or relate to training, policies or
    procedures on DNM.

7   Request No. 17: Any and all documents received, read or reviewed
8   by each defendant that refer or relate to training, policies or
    procedures on CACs.

9   Request No. 18: Any and all documents received, read, or reviewed
    by each defendant that refer or relate to training, policies or
10  procedures, on Inmate Housing Assignments, including but not
    limited to necessary considerations.

11

12       The undersigned agrees with defendants that request nos. 14-18 are over broad.

13  Not every document sought in these requests is relevant to the instant action.  In addition,

14  defendants represent that the documents plaintiff seeks in these requests are not in their

15  possession, custody or control.  Because defendants' objections have merit, the motion to compel

16  as to request for production of documents nos. 14-18 is denied.

17  III.  Request for Production of Documents, Set Two

18       Plaintiff objects to defendants' responses to his request for production of

19  documents, set two, which contained three requests.  These requests and defendants' responses

20  are set forth herein:

21  Request No. 1: Any and all documents that refer or relate to
    policies, procedures and practices in effect in April 2009 for SOL
22  Medical and Correctional Staff regarding Americans with
    Disabilities Act ("ADA") Log Books kept in each housing unit for
23  tracking qualified inmates with qualified ADA disabilities.

24  Response to Request No. 1: There are Log Books indicating
    Inmates's with ADA disabilities.  Defendants do not have any
25  policy or procedure documents in their possession, custody or
    control.

26

6

Request No. 2: Any and all formal and informal written complaints (including but not limited to 602 forms) against any defendant, alleging violations of failure to accommodate qualified disabilities, under the ADA, Rehabilitation Act ("RA"), and or failure to follow doctor's orders, and failure to honor Comprehensive Accommodation Chronos.

Response to Request No. 2:
Defendant Koelling: I am not aware of any complaints against me.
Defendant Martinez: I am not aware of any complaints against me.

Request No. 3: Any and all documents received, read or reviewed by each defendant that refer to or relate to Act ADA Log Books kept in each housing unit for tracking qualified inmates with qualified ADA disabilities.

Response to Request No. 3: There are Log Books indicating Inmates with ADA disabilities. Defendants do not have any documents in their possession, custody or control that refer or relate to these Log Books.

Regarding request no. 1, in their opposition to the motion to compel defendants state that plaintiff is seeking policies from 2009. Defendants state that they do not have policies from 2009 in their possession. Defendants also state that if there are policies for their review, they do not know if these were the CDCR policies in effect in 2009. Defendants also state that they are not aware of any policies referring to log books.

In request no. 1, plaintiff seeks the 2009 policies for ADA inmate Log Books. Defendants have responded that to the best of their knowledge, no such policies exist. The undersigned cannot compel defendants to produce documents that do not exist. Accordingly, the motion to compel as to this request is denied.

Regarding request no. 2, in their opposition defendants state that they have appropriately responded to request no. 2. In responding to this request, the undersigned presumes that defendants made a reasonable inquiry before responding to this request. See Fed. R. Civ. P. 26(g)(1) (by signing a response to a discovery request, a party certifies that their response is made after a reasonable inquiry). Accordingly, the motion to compel as to this request is denied.

1    In request no. 3, plaintiff sought all documents reviewed by each defendant

2    regarding ADA Log Books.  Other than the log books, defendants state that they have no other

3    documents related to these log books.  The undersigned presumes that defendants made a

4    reasonable inquiry before responding to this request.  The undersigned cannot order defendants to

5    produce documents that do not exist.  Accordingly, the motion to compel as to this request is

6    denied.

7    IV.   Interrogatories

8    Plaintiff moves to compel further responses to interrogatories nos. 1-5, 13 and 15-

9    17.

10    Under the Federal Rules of Civil Procedure, a responding party is obligated to

11    respond to interrogatories to the fullest extent possible, Fed. R. Civ. P. 33(b)(3), and any

12    objections must be stated with specificity, Fed. R. Civ. P. 33(b)(4).  The responding party shall

13    use common sense and reason.  E.g., Collins v. Wal-Mart Stores, Inc., No. 06-2466-CM-DJW,

14    2008 WL 1924935, *8 (D. Kan. Apr.30, 2008).  A responding party is not generally required to

15    conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond

16    must be made.  L.H. v. Schwarzenegger, No. S-06-2042 LKK GGH, 2007 WL 2781132, *2

17    (E.D. Cal. Sep. 21, 2007).  Further, the responding party has a duty to supplement any responses

18    if the information sought is later obtained or the response  provided needs correction.  Fed. R.

19    Civ. P. 26(e)(1)(A).

20    *Interrogatory No. 1*

21    Interrogatory no. 1 asked each defendant to state their "true" name and all

22    positions held in the CDCR and the dates they held them.  In responding, defendants did not give

23    their full first names.  Instead, defendants gave the initial of their first name, i.e., B. Koelling and

24    C. Martinez.  In the motion to compel, plaintiff argues that defendants should be required to

25    provide their full first name.

26    ////

1        In the opposition, defendants argue that Title 15, Section 3004(a) provides that

2   employees may use first names in conversation with each other when it acceptable by both

3   parties.  Defendants state that they will provide their first names if ordered by the court.

4   Defendants have provided no valid objection to plaintiff's request for their first names.

5   Defendants have also cited no valid authority on which the court could uphold an objection to

6   plaintiff's request for their first names.   Accordingly, the motion to compel as to interrogatory

7   no. 1 is granted.

8               *Interrogatories Nos. 2-5*

9        Interrogatories nos. 2-5 sought information regarding training:

10       No. 2: Identify by name, date, duration, title and location any
         training you have received concerning the CDCR policies and
11       procedures on the American's with Disabilities Act ("ADA").

12       No. 3: Identify by name, date, duration, title and location, any
         training you have received concerning the CDCR policies and
13       procedures on the Disability Placement Program ("DPP").

14       No. 4: Identify by name, date, duration, title and location any
         training you have received concerning the CDCR policies and
15       procedures on inmates designated as Disability Not impacting
         placement, Mobility impaired ("DNM").
16
17       No. 5: Identify by name, date, duration, title and location any
         training you have received concerning the CDCR policies and
         procedures on inmates who assert they have lower bunk chronos,
18       i.e., Comprehensive Accommodation Chronos ("CAC") but are
         unable to produced them.
19

20       In response to interrogatories nos. 2-5, defendants responded, "We undergo a lot

21   of training.  I do not remember names, dates, durations and locations.  I do not have possession

22   of documents that would provide this information."  In the opposition, defendants reiterate that

23   they do not have possession of their training records.  For that reason, defendants argue that they

24   cannot respond to interrogatories nos. 2-5.

25       Significantly, while defendants state that they do not have possession of

26   documents that would provide this information, they do not state that they lack access to this

1  information.  Presumably, defendants could access their personnel records that includes their

2  records of training received to respond to these interrogatories.  This requirement is especially

3  true in light of defense counsel's statement that CDCR would not produce personnel records of

4  an officer because of applicable privileges.  Thus, defendants are the best source of this

5  information.  Accordingly, defendants are ordered to file an amended response to these

6  interrogatories.

7            *Interrogatory No. 13*

8            Interrogatory no. 13 asked defendants to identify the "true identifies of

9  Correctional Officers Bailey and Cortez (including but not limited to, their first and last names)."

10  Defendants responded that for privacy reasons, Correctional Officers do not give out their first

11  names.  Defendants also stated that they did not recall these officers "being involved."

12            In the opposition to the pending motion, defendants state that "as previously

13  argued," officers do not give out their first names for privacy reasons.  Other than Title 15,

14  Section 3004(a), defendants' opposition cites no legal authority in support of this privacy

15  objection.  As discussed above, this section states that employees may use first names in

16  conversation when it acceptable by both parties.  Title 15, section 3004(a) does not support

17  defendants' privacy objection.  To the extent defendants are making a relevancy objection by

18  stating that they do not recall these officers being involved, this objection is also not well

19  supported.  See Dkt. No. 1 at 36 (response to plaintiff's first level appeal discussing involvement

20  of Officers Cortez and Bailey),

21            Defendants also state that they would have to ask these officers what their first

22  names are, which is something plaintiff himself can do.  At this time, defendants' objection that

23  the information sought is equally available to plaintiff is not well taken.  For these reasons,

24  plaintiff's motion to compel as to interrogatory no. 13 is granted.

25            *Interrogatories Nos. 15-17*

26            Interrogatories nos. 15-17 are set forth herein:

No. 15: Identify any and all persons authorized to certify Medical Records at SOL.

No. 16: Identify any and all persons authorized to authenticate and or certify Inmate Central File documents at SOL.

No. 17: Identify any and all persons authorized to certify and or authenticate Inmate Central File documents at SOL.

In response to interrogatories nos. 15-17, defendants responded, "I do not know." In the opposition, defendants state that as officers, they are not involved in record keeping or litigation. Because defendants' duties do not involve record keeping, the undersigned accepts their representation that they do not know the identities of persons authorized to authenticate medical records and central files. However, it is unclear if defendants made a reasonable effort to respond to these interrogatories. It is unclear how difficult it would be for defendants to discover who, at California State Prison-Solano, is authorized to certify these records. Accordingly, defendants are ordered to file an amended response to these interrogatories.

V.  Request for Admissions, Set Two

Generally, Federal Rule of Civil Procedure 36(a) requires one of three answers to an request for admission: (1) an admission; (2) a denial; or (3) a statement detailing why the answering party is unable to admit or deny the matter. Fed. R. Civ. P. 36(a)(3); Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242 (9th Cir.1981). A treatise instructs that

> [t]he responding party is required to undertake a 'good faith' investigation of sources reasonably available to him or her in formulating answers to RFAs (similar to the duty owed in responding to interrogatories; [citation]). [Adv. Comm. Notes to 1970 Amendment to FRCP 36(a)] Stated otherwise, the responding party must make 'a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control.' [Bouchard v. United States (D ME 2007) 241 FRD 72, 76; Henry v. Champlain Enterprises, Inc. (ND NY 2003) 212 FRD 73, 78].

The Rutter Group, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Ch. 11(IV)-D, 11:2047 (2011).

////

1      *Timeliness*

2              Plaintiff first argues that his request for admission, set two, should be deemed

3      admitted because defendants' amended response is untimely.  See Fed. R. Civ. P. 36(a)(3) (a

4      matter is admitted unless, within thirty days after being served, the party serves their response).

5      The background to this argument, as addressed in the January 17, 2012 order, is set forth herein.

6              On May 24, 2011, plaintiff submitted a second set of requests for admissions to

7      each defendant.  With their response, defendants objected to nearly every request.  Defendants

8      also sought a two week extension of time to amend their responses.  Plaintiff granted this request.

9      When plaintiff did not receive defendants' amended responses by the discovery cut-off date, he

10     filed his September 2011 motions to compel.  In the opposition to the September 2011 motions

11     to compel, defendants stated that they were "now" forwarding to plaintiff their amended

12     responses to request for admissions, set two.

13             Defendants' amended response to request for admissions, set two, is arguably

14     untimely.  However, the undersigned is reluctant to deem the requests for admissions admitted

15     because defendants did provide a response.   Defendants' conduct in responding to the request

16     for admissions will be addressed below in the section addressing sanctions.  Accordingly, the

17     undersigned turns to the merits of plaintiff's motion.

18     *Request No. 1*

19             Request no. 1 states as follows:

20             Admit the authenticity of the Administrative Appeal, (602), SOL
               log No.: SOL-09-01200, IAB Case No.: 0906328, submitted by
21             plaintiff on April 29, 2009, and filed successively at the first level
               through each level to the third level, with the final decision issued
22             by R. Pimental, Appeals Examiner, Inmate Appeals Branch, and
               approved by N. Grannis, Chief of Inmate Appeals Branch, on
23             December 14, 2009.  A true, correct and complete copy of said
               document is attached at Exhibit A.

24

25             Defendants objected that the request called for speculation, and that they lacked

26     sufficient information or knowledge to authenticate the document.  Without waiving the

                                                    12

1  objections, defendants stated that the documents appeared to be CDCR Appeals documents, but

2  they could not state that they are true and correct copies of what they purport to be.  On that

3  basis, defendants denied the request for admission.

4          Defendants' objection that they lack sufficient information or knowledge to

5  authenticate documents has merit.  Accordingly, the motion to compel this request for admission

6  is denied.

7          *Request No. 2*

8          Request No. 2 asks defendants to admit that on April 19, 2009, they, along with

9  Correctional Officers Bailey and Cortez, in concert or simultaneously, went to plaintiff's cell in

10  building six.  Defendants responded that while they did not independently recall this incident, it

11  appears from documents that they were interviewed by Sergeant Durfey regarding an incident

12  with plaintiff on April 19, 2009.  On the basis of this document, defendants admitted that they

13  went to plaintiff's cell on that day.  Defendants denied knowledge that this was building six.

14  Defendants also denied that the others mentioned were present, as they did not recall.

15          Attached as an exhibit to plaintiff's complaint is a copy of a memorandum dated

16  July 9, 2009 denying plaintiff's first level appeal regarding the matters at-issue in the instant

17  action.  (Dkt. No. 1 at 35.)  This memorandum states that both defendants were interviewed

18  regarding the alleged incident.  This memorandum also states that, "on June 8, 2009, Officer's

19  Cortez and Bailey were interviewed and stated that they followed the direction of their sergeants

20  in order to compact the cell." (Id. at 36.) This document indicates that Officers Cortez and

21  Bailey were involved in plaintiff's April 19, 2009 move to the upper bunk.  Accordingly,

22  defendants are directed to review this document and file an amended response to request no. 2.

23          *Request No. 3*

24          Request no. 3 asks defendants to admit that on April 19, 2009, their post

25  assignment was a Correctional Sergeant at SOL.  Defendant Martinez admitted this request.

26  Defendant Koelling denied this request because he was an Acting Sergeant at SOL at the time.

1    Defendants adequately responded to request no. 3.

2                    *Request No. 26*

3                    Request No. 26 asked defendants to admit that on April 19, 2009, "despite having

4    observed the blue 'ADA-DNM' sign on plaintiff's cell door, and plaintiff's assertions that he

5    [was] mobility impaired, and had a lower bunk CAC, though unable to produce it, you approved

6    of plaintiff being instructed to move to the top bunk."

7                    Defendants responded,

8                    While I do not independently recall this incident with plaintiff, it
        appears from Appeals documents that I was interviewed by
9        Sergeant Durfey on June 8, 2009 in regards to an incident with
        plaintiff on April 19, 2009.  On the basis of this document, I admit
10       that plaintiff was instructed to move to an upper bunk because he
        was unable to produce any medical accommodation chrono
11       verifying his alleged lower bunk restriction.  I deny that I observed
        the blue "ADA-DNM" sign on plaintiff's cell door.  I deny that I
12       heard plaintiff's assertions that he was mobility impaired.  I deny
        that I heard plaintiff's assertions that he had a valid lower bunk
13       CAC, though unable to produce it.  I deny that it was me who
        instructed plaintiff to move, as I do not remember who gave the
14       instruction.

15                   The undersigned finds that defendants adequately answered this request for

16   admission.[3]

17                   *Request Nos. 27-33*

18                   Defendants admitted request nos. 27-30 and 30-33.  The motion to compel is

19   denied as to these requests because defendants admitted the requests.

20                   Request No. 31 asked defendants to admit that prior to April 19, 2009, they were

21   properly trained on the policies and procedures in effect at SOL in regard to the Disability and

22   Effective Communication System printed Roster Report, distributed weekly to each housing unit.

23

24           [3]  It is fairly clear from the appeal document referenced in defendants' response that either
     or both defendants ordered plaintiff to move.  (Dkt. No. 1 at 35-36.)  This appeal states that
25   Officers Cortez and Bailey stated during interviews that they followed the directions of "their
     sergeants" to compact the cell.  However, this appeal document does not clearly indicate whether
26   it was both or one of the defendants who made the order to move.

1   Defendants responded, "Admit I have received training.  Deny the balance as I do not know the

2   timing, nor do I distribute these 'Roster Reports' to the housing units."  The undersigned finds

3   that defendants adequately answered this request.

4                    *Request Nos. 4-25*

5                    Defendants denied request nos. 4-25 on the grounds that they did not

6   independently recall the incident with plaintiff and the documents reviewed did not provide a

7   further response.

8   Request nos. 4-25 are set forth herein:

9           Request no. 4 to Koelling: Admit that on April 19, 2009, you
            instructed plaintiff Sean Shields ("plaintiff") if he could not
10          produce a valid lower bunk Comprehensive Accommodation
            Chrono he would have to move to the top bunk.
11
            Request No. 4 to Martinez: Admit that, on April 19, 2009, you
12          were present when Defendant Koelling's instructions to plaintiff
            Sean Shields ("plaintiff") that if he could not produce a valid lower
13          bunk Comprehensive Accommodation Chrono ("CAC") he would
            have to move to the top bunk.
14
            Request No. 5 to both defendants: Admit that on April 19, 2009,
15          you did not check the ADA log book prior to requiring plaintiff to
            produce a lower bunk CAC or move.
16
            Request No. 6 to both defendants: Admit that on April 19, 2009,
17          you did not check the Disability Effective Communications System
            prior to requiring plaintiff to produce a lower bunk CAC or move.
18
            Request No. 7 to both defendants: Admit that on April 19, 2009,
19          you did not check the Disability and Effective Communications
            System printed Roster Report, distributed weekly to each housing
20          unit prior to requiring plaintiff to produce a lower bunk CAC or
            move.
21
            Request no. 8 to both defendants: Admit that on April 19, 2009,
22          you did not check plaintiff's central file prior to requiring him to
            produce a lower bunk CAC or move.
23
            Request No. 9 to both defendants: Admit that on April 19, 2009,
24          you did not check with Medical Records Staff to confirm whether
            plaintiff had a verified mobility impairment that required he be
25          assigned to a lower bunk prior to requiring plaintiff to produce a
            lower bunk CAC or move.
26

15

Request No. 10 to both defendants: Admit that on April 19, 2009, you did not consult plaintiff's correctional counselor ("CCI") to determine whether he had a verified mobility impairment and or CAC that required he be assigned to a lower bunk prior to requiring plaintiff to produce a lower bunk CAC or move.

Request no. 11 to both defendants: Admit that on April 19, 2009, you did not consult the Assignment Lieutenant to determine whether plaintiff had a verified mobility impairment and or a CAC, that required he be assigned to a lower bunk prior to requiring plaintiff to produce a lower bunk CAC or move.

Request No. 12 to both defendants: Admit that on April 19, 2009, plaintiff informed acting Sergeant Koelling in your presence that he had an Americans with Disability Act ("ADA") qualified mobility impairment.

Request no. 13 to defendant Koelling: Admit that on April 19, 2009, plaintiff informed you that he did have a valid lower bunk chrono.

Request no. 13 to defendant Martinez: Admit that on April 19, 2009, plaintiff informed Acting Sergeant Koelling in your presence that he did have a valid lower bunk CAC.

Request no. 14 to defendant Koelling: Admit that on April 19, 2009, plaintiff informed you that he did not know where his copy of his lower bunk CAC was located.

Request no. 14 to defendant Martinez: Admit that, on April 19, 2009, plaintiff informed Acting Sergeant Koelling in your presence that he did not know where his copy of his lower bunk CAC was located.

Request No. 15 to defendant Koelling: Admit that on April 19, 2009, plaintiff directed you to the ADA-DNM Notice affixed to the outside of his cell door.

Request no. 15 to defendant Martinez: Admit that on April 19, 2009, plaintiff directed Acting Sergeant Koelling in your presence to the ADA-DNM Notice affixed to the outside of his cell door.

Request No. 16 to both defendants: Admit that on April 19, 2009, you disregarded plaintiff's assertions indicated in admissions nos. 11-14.

Request no. 17 to both defendants: Admit that on April 19, 2009, you did not check the ADA log book after plaintiff informed you of his Mobility Impaired Status.

Request No. 18 to both defendants: Admit that on April 19, 2009,

you did not check the Disability Effective Communications System after plaintiff informed you of his Mobility Impairment.

Request No. 19 to both defendants: Admit that on April 19, 2009, you did not check the Disability Communications System printed Roster Report distributed weekly to each housing unit, after plaintiff informed you of his mobility impairment.

Request No. 20 to both defendants: Admit that on April 19, 2009, you did not check plaintiff's central file after plaintiff informed you of his mobility impairment.

Request No. 21 to both defendants: Admit that on April 19, 2009, you did not check with Medical Records staff to confirm whether plaintiff had a verified Mobility Impairment that required he be assigned to a lower bunk after plaintiff informed you that he had a mobility impairment.

Request No. 22 to both defendants: Admit that on April 19, 2009 you did not consult plaintiff's CCI to determine whether plaintiff had a verified Mobility Impairment and a lower bunk CAC that required he be assigned to a lower bunk after plaintiff informed you that he was mobility impaired?

Request No. 23 to both defendants: Admit that on April 19, 2009 you did not consult the Assignment Lieutenant to determine whether plaintiff had a verified mobility impairment and a lower bunk CAC, that he required to be assigned to a lower bunk after plaintiff informed you that he was mobility impaired.

Request No. 24 to both defendants: Admit that on April 29, 2009 you saw the blue "ADA-DNM" sign affixed to the cell door which plaintiff was housed in before you asked plaintiff to produce a lower bunk chrono.

Request No. 25 to both defendants: Admit that on April 29, 2009, you saw the blue "ADA-DNM" sign affixed to the cell door in which plaintiff was housed after plaintiff informed you he was mobility impaired.

The memorandum dated July 9, 2009 denying plaintiff's first level appeal regarding the matters at-issue in the instant action contains some information regarding defendants' involvement.  (Dkt. No. 1 at 35.)  However, this memorandum does not directly address the issues raised in the requests for admissions above.  The undersigned presumes that defendants reviewed this document in preparing their responses to these requests, and that review of this document did not refresh their recollections.  Because defendants do not remember the

1   incident and because the documents they reviewed did not refresh their recollections, the

2   undersigned cannot order further responses to these requests.  Accordingly, the motion to compel

3   as to these requests for admissions is denied.

4   VI.  Request for Admissions, Set One

5              As discussed above, on January 17, 2012, defendants were ordered to provide

6   further responses to request for admissions, set one, within twenty-one days.  In the pending

7   motion to compel, plaintiff first argues that he did not receive further responses from defendants

8   within that time.  Plaintiff argues that defendants had twenty-one days from the date the order

9   was signed on January 13, 2012, to provide him with further responses.

10             Defendants had twenty-one days to provide further responses from the date the

11  order was *filed* on January 17, 2012 order, i.e., until February 7, 2012.  In the opposition to the

12  pending motion, defendants state that they sent plaintiff their amended responses on February 7,

13  2012.  Accordingly, the undersigned finds that plaintiff's objection that defendants did not

14  provide timely further responses to request for admissions, set one, is without merit.

15             Plaintiff next requests that the undersigned "revisit" the January 17, 2012 order

16  addressing request for admissions, set one.  Plaintiff argues that based on new information from

17  defendants in response to request for admissions, set two, nos. 30, 31, 32 and 33, defendants

18  should be ordered to provide new responses to request for admissions, set one, nos. 3, 4, 9-14 and

19  18.  These requests from set one are set forth herein:

20             No. 3: Admit that the Disability Placement Program ("DPP") has
           been established by the CDCR since 1996.
21
           No. 4: Admit that DNM is a DPP category code indicating that an
22         inmate with this designation has an Americans with Disabilities
           Act impairment.
23
           No. 9: Admit that CDCR health care staff complete CDC form
24         7410, Comprehensive Accommodation Chrono(s) for
           accommodations that are medically necessary or are required under
25         the Americans with Disabilities Act ("ADA").

26             No. 10: Admit that the purpose of utilizing the Comprehensive

Accommodation Chrono is to document temporary and permanent health accommodation information in a systematic and uniform manner and the [sic] minimize the disruption of needed accommodations that could result from inmate patient movement.

No. 11: Admit that the CDCR 7410, Comprehensive Accommodation Chrono, functions as a physician's order.

No. 12: Admit that the original copy of the CDCR Form 7410, is filed in the inmate patient's Unit Health Record.

Request no. 13: Admit that the original copy of the CDCR Form 7410 is placed in the inmate patient's Central File.

Request no. 14: Admit that the original copy of the CDCR Form 7410 is provided to the inmate patient.

Request no. 18: Admit that CDCR Form 7410 is only issued for inmates with serious medical conditions, that if assigned to an upper bunk, may be subjected to an unreasonably dangerous condition or undue pain.

The undersigned denied the motion to compel as to the requests for admissions set forth above based on defendants' objection that they could not answer the requests as they involved matters concerning Health Care Services, and defendants are in corrections.

Request for admissions, set two, nos. 30-33, asked defendant to admit that prior to April 19, 2009, they were properly trained on policies and procedures in effect at SOL regarding 1) the Disability and Effective Communication System; 2) the Disability and Effective Communication System printed roster report; 3) the ADA Log Book; and 4) Comprehensive Accommodation Chronos. Defendants admitted these requests for admissions.

That defendants received training regarding the Disability and Effective Communication System, the ADA Log Book and Comprehensive Accommodation Chronos does not indicate that they were knowledgeable regarding the Health Care Services matters addressed in request for admissions, set one, nos. 3, 4, 9-14 and 18. Accordingly, plaintiff's request that the undersigned "revisit" these requests is denied.

////

////

19

1   VII.  Request for Sanctions

2              Plaintiff requests that defendants be sanctioned for failing to provide him with

3   timely responses to his discovery requests.  For the following reasons, the undersigned orders

4   that defendants pay plaintiff reasonable expenses associated with bringing his motions to compel.

5              Federal Rule of Civil Rule 37(b)(2) provides that the court may impose an

6   appropriate sanction on a party who fails to obey a discovery order. The sanctions authorized in

7   Rule 37(b)(2) vary in severity, depending on the egregiousness of the offending party's conduct

8   and the prejudice resulting therefrom.  If a party fails to obey a court order regarding discovery,

9   the court must order the disobedient party to pay the reasonable expenses, including attorneys'

10  fees, caused by the failure, unless the failure was substantially justified or other circumstances

11  make the award of expenses unjust.  Fed. R. Civ. P. 37(b)(2)(C).

12             The lack of bad faith does not immunize a party or its attorney from sanctions;

13  however, a finding of good or bad faith my be a consideration in determining whether imposition

14  of sanctions would be unjust.  Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994); see

15  also Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1343 (9th Cir. 1985) ("We

16  consistently have held that sanctions may be imposed even for negligent failures to provide

17  discovery."). Moreover, "[b]elated compliance with discovery orders does not preclude the

18  imposition of sanctions" as the "[l]ast-minute tender of documents does not cure the prejudice to

19  opponents."  North American Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447, 1451 (9th

20  Cir. 1986), citing G–K Properties v. Redevelopment Agency of City of San Jose, 577 F.2d 645,

21  647–48 (9th Cir. 1978).

22             The background to plaintiff's request for sanctions, discussed in the January 17,

23  2012 order and briefly above, is set forth herein.[4]

24  _____

25  [4]  Defendants' opposition to the pending request for sanctions indicates that they
    interpreted plaintiff's request for sanctions as addressing their responses to the pending motion to
    compel.  It is clear to the undersigned that plaintiff's request for sanctions is addressed to the
26  matters raised by plaintiff in his September 2011 motions to compel, as discussed above.   In the

1    In the motions to compel filed in September 2011, plaintiff alleged that he served

2    defendants with interrogatories and requests for production of documents on May 13, 2011.

3    Plaintiff granted defendants an extension of time to July 11, 2011, to file their responses.

4    Plaintiff then sought to extend the July 29, 2011 discovery cut-off date in order to file motions to

5    compel regarding his request for production of documents and interrogatories.  On August 11,

6    2011, the undersigned granted this motion and ordered plaintiff's motion to compel due within

7    thirty days.  In the September 2011 motions to compel, plaintiff alleged that on August 31, 2011,

8    he attended his deposition at which he informed defense counsel that he still had not received

9    defendants' responses to his interrogatories and requests for production of documents.  Plaintiff

10   alleges that defense counsel advised him to file a motion to compel.

11   In the September 26, 2011 opposition to plaintiff's September 2011 motions to

12   compel, defendants did not dispute plaintiff's version of events.  Defendants stated that they were

13   now forwarding to plaintiff responses to his interrogatories and request for production of

14   documents.

15   Regarding request for admissions, set two, in the September 2011 motions to

16   compel, plaintiff alleged that on May 24, 2011, he submitted a second set of requests for

17   admissions to each defendant.  Plaintiff alleged that in their response, defendants objected to

18   nearly every request.  With their response, defendants included a letter requesting a two week

19   extension of time to amend their requests.  Plaintiff granted this request.  When plaintiff did not

20   receive defendants' amended response by the discovery cut-off, he filed the September 2011

21   motions to compel.

22   In their opposition to the September 2011 motions to compel, defendants did not

23

24   January 17, 2012 order, the undersigned stated that it was concerned by defendants' and defense
     counsel's apparent lackadaisical approach in responding to discovery requests.  (Dkt. No. 30 at
25   2.)  The court further stated that in ruling upon plaintiff's renewed motion to compel, it would
     take up the issue of whether sanctions are appropriate.  (Id.)

26

1   dispute plaintiff's version of events regarding his request for admissions, set two.  Defendants

2   stated that they were now forwarding to plaintiff amended responses to his request for

3   admissions, set two.  Defendants claimed that in preparing their original responses, they did not

4   have access to plaintiff's prison and medical files.  Defendants stated that they obtained access to

5   these files after preparing the initial responses and after plaintiff granted them access.  The

6   amended response was based on reviewing these files.

7          Pursuant to the April 8, 2011 discovery order, responses to written discovery

8   requests are due within forty-five days after the request is served.  (Dkt. No. 16 at 5.)

9   Defendants did not provide plaintiff with responses to his interrogatories and request for

10  production of documents until after plaintiff filed his motions to compel.  By failing to provide

11  plaintiff with timely responses to these requests, defendants failed to obey the discovery order.

12         Regarding the requests for admissions, set two, defendants did not provide

13  plaintiff with their amended responses during the time plaintiff granted them.  While the

14  discovery order did not set a deadline for the filing of amended responses, defendants' failure to

15  timely provide plaintiff with the amended responses was not a good faith attempt to comply with

16  the discovery order.

17         Because defendants failed to obey court orders in providing plaintiff with

18  responses to his discovery requests, plaintiff's request for sanctions is granted.  Defendants are

19  ordered to pay plaintiff the costs for bringing his three motions to compel addressing these

20  discovery requests.  In making this order, the undersigned finds that defendants' failure to

21  provide plaintiff with timely responses to his discovery requests was not substantially justified.

22  While the court is mindful that plaintiff served defendants with a large number of discovery

23  requests, the volume of these requests did not excuse defendants from providing timely

24  responses.  The award of costs is not unjust.

25         Because plaintiff is proceeding without counsel, he is not entitled to an award of

26  attorneys' fees.  However, he is entitled to be paid the costs associated with bringing the motions

1  to compel filed in September 2011 and February 2012, which may include copying expenses and

2  postage.  If plaintiff did not pay any money for copying expenses and/or postage, he is not

3  entitled to costs.  Within twenty-one days of the date of this order, plaintiff shall submit a short

4  statement of expenses, supported by trust account statements if possible, demonstrating the

5  amount of money paid in bringing the motions to compel filed in September 2011 and February

6  2012.  If plaintiff had no expenses in bringing these motions, he shall notify the court within that

7  time.

8        Accordingly, IT IS HEREBY ORDERED that:

9        1.  Plaintiff's February 14, 2012 motion to compel (Dkt. No. 31) is granted as to

10  interrogatories nos. 1, 2-5, 13, 15-17, and request for admissions, set two, no. 2; defendants shall

11  provide plaintiff with further responses to these requests within twenty-one days of the date of

12  this order; plaintiff's motion to compel is denied in all other respects;

13        2.  Plaintiff's request for sanctions is granted; within twenty-one days of the date

14  of this order, plaintiff shall file briefing addressing the costs incurred, i.e., copying and postage,

15  in the preparation of the motions to compel filed in September 2011 and on February 14, 2012.

16  DATED:  April 23, 2012

17

18

19  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

20  sh2866.mtc(2)

21

22

23

24

25

26